**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| YAODI HU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07 C 3822 |
| ) | |
| PETER HUEY, ANGELA IP, ) | Judge Virginia M. Kendall |
| and K.Y. Chau, ) | |
| ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND OPINION ORDER**

Plaintiff Yaodi Hu ("Hu"), a *pro se* litigant, brought suit against Defendants, Peter Huey ("Huey"), Angela Ip ("Ip"), and K.Y. Chau ("Chau") (collectively the "Defendants") alleging that they conspired to restrain his trade, violate his First Amendment right to free speech and retaliated against him in connection with a commercial lease for property. His allegations stem from the Defendants' eviction action against him and his wife, Jun Zhou ("Zhou") – an action which, at the time of this Court's ruling on Defendants' Motion to Dismiss, was pending in state court.

### Hu's History of Federal Court Filings

Hu is no stranger to the federal judicial system nor to filing complaints alleging discriminatory actions under 42 U.S.C. §§ 1981 and 1983 and the Sherman Antitrust Act. *See* Case Nos. 06 C 6589, 07 C 844, 07 C 3748, 07 C 3822, 07 C 5494, 07 C 7203, 08 C 839, 08 C 1032, 08 C 1033, 08 C 2007, 07 C 3428. Yaodi Hu has filed twelve federal claims since October 25, 2006 including five cases since February of 2008. In Hu's first federal claim, *Bell v. Martinez*, Hu and others filed an action under 42 U.S.C. § 1983 seeking to enjoin the State of Illinois from enforcing

Article 3 of the Residential Real Property Disclosure Act and the Illinois Predatory Lending Database Pilot Program because it had a discriminatory effect on residents of ten zip codes. *See* 06 C 5809; Cplt. ¶ 1. Hu's counsel withdrew from representing Hu but continued to represent the other plaintiffs. On November 29, 2006, Hu, now as a *pro se* litigant, sought to amend the Complaint and file a 68-page cause of action on behalf of a class of borrowers seeking a loan from a loan broker or a loan originator licensed under the Illinois Residential Mortgage License Act in the Pilot Area. Dk. 34. Hu's Complaint, filed against numerous defendants including Governor Rod Blagojevich and Speaker of the House Michael Madigan, alleged that the defendants violated the RICO and Sherman Antitrust Acts, in addition to other allegations. The District Court Judge dismissed Hu's Complaint, Hu moved to reconsider, and appealed the District Court's denial to the Seventh Circuit. Dk. 189. In *Hu v. Cantwell*, et. al, Hu, *pro se*, sought compensatory and punitive damages against First Chicago Realty and two individual defendants for violating the Fair Housing Act, 42 U.S.C. § 1981, 42 U.S.C. § 1982, the Illinois Human Rights Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, and for breach of contract. In short, Hu alleged that the defendants discriminated against him as a minority buyer. The case is pending.

Less than four months after filing the *Cantwell* case, Hu filed another action – *Hu v. Park National Bank*, against Park National Bank, Donald R. Nichols, Postmaster of the U.S. Postal Service, the U.S. Postal Service, J.P. Morgan Chase Bank, and Walinski & Trunkett, P.C. Hu's Complaint stemmed from the sale of a piano. *See* Dk. 1. When Hu notified defendants that the piano was purchased using counterfeit money order, the defendants reported the matter to federal officials which report Hu believes to be a violation of the Right to Financial Privacy Act. In June, 2007, Hu's counsel withdrew, Hu filed a *pro se* appearance, and moved to file a second amended

complaint adding seven new defendants and thirteen new claims for violations of his rights under the Fourth and Fifth Amendments, the Equal Protection clause of the Fourteenth Amendment, 42 U.S.C. § 1981 and various federal criminal and bank statutes. *See* Dk. 28, 32, 35. The District Court denied Hu's motion on the basis that allowing Hu at such a late date to add seven defendants and a "myriad of new claims would greatly protract the time and resources consumed by this litigation." Dk. 65, 89. Hu moved to reconsider and the Court denied his motion. Dk. 97. Subsequently, the District Court granted Defendants' Motion for Summary Judgment, Hu moved to reconsider, his motion was again denied, and Hu appealed to the Seventh Circuit. Dk. 97-98, 105, 109.

On July 3, 2007, five months after Hu filed the *Park National Bank* case, Hu, appearing *pro se*, filed two more cases within 6 days of each other– *Hu v. Village of Midlothian*, 07 C 3748 and the case before this Court, *Hu v. Huey*, 07 C 3822. Both cases concern purported violations 42 U.S.C. § 1981, in addition to other claims. In *Hu v. Midlothian*, Hu alleged that the Village of Midlothian violated his constitutional rights when it repeatedly fined him under municipal code 4-18-9(b)5 for overgrown vegetation and for denying his application to display a sign advertising his insurance business. Hu amended his complaint on three occasions and the case is pending before the District Court. Hu's pending action before this Court against Defendants Huey, Ip, and Chau is described in detail below. Two months after filing the *Village* and *Huey* cases, Hu filed *Hu v. Mann*, 07 C 5494, *pro se*, alleging violations of the Sherman Act, the Real Estate Settlement Procedure Act, and the Illinois Antitrust Act. Hu alleged, in short, that Defendants Elizabeth Mann conspired with First American Title to refuse to deal with Quality Title Insurance and Hu in connection with the closing of a real estate transaction. Hu's Complaint was dismissed on January

3

8, 2008 for failure to comply with Federal Rule of Civil Procedure 4(m). Dk. 8.

One month before the District Court dismissed Hu's claim against Mann, Hu filed his seventh federal court claim–this time against the Village of Maywood. *See Hu v. Village of Maywood*, 07 C 7203. Hu alleged that the Village violated 42 U.S.C. § 1983 when it towed Hu's vehicles from his private property. Dk. 1. The Defendants moved to dismiss and Hu amended his Complaint. Still pending before the District Court is Defendants motion to dismiss the First Amended Complaint.

The year 2008 has proved to be Hu's most litigious year to date. Since February 8, 2008, Hu has filed five causes of action against seventeen defendants. *See* Case Nos. 08 C 839, 08 C 1032, 08 C, 1033, 08 C 2007, 08 C 3825. Hu is suing the City of Chicago under 42 U.S.C. § 1981 and 1983 for towing two of his vehicles alleging that the City targets ethnic Chinese minorities when it issues parking tickets. *See* 08 C 839. Hu filed a motion for preliminary injunction under Federal Rule of Civil Procedure 65 and the District Court denied Hu's Motion. Dk. 16. Hu moved to reconsider and the District Court denied his motion on May 29, 2008. Dk. 27. One day later, Hu filed a second Motion to Reconsider which was denied on June 5, 2008. Dk. 31. Hu's appeal to the Seventh Circuit is pending and subject to dismissal under Circuit Rule 3(b). Dk. 27.

Twelve days after Hu's first 2008 federal case, Hu filed two cases on the same day– *Hu v. Pearl River Piano USA* and *Hu v. American Bar Association*, 08 C 1032 and 08 C 1033, respectively. In *Hu v. Pearl River Piano USA*, he alleged that he contracted with Pearl River to purchase several pianos. Because Hu "did not fit into a typical piano dealer prototype: a white male," Hu believes that the contract that he signed contained discriminatory terms in violation of 42 U.S.C. § 1981 and the Sherman Antitrust Act. Cplt.¶ 17; Dk. 1. Hu's third lawsuit for the month

4

of February and second lawsuit filed on February 20, 2008, *Hu v. American Bar Association*, seeks redress for purported violations of the Fourteenth Amendment of the U.S. Constitution and the Equal Protection Clause, based on the ABA's failure to accredit Hu with two years of credit hours obtained at Kent Law School in 1991. Cplt. Dk. 1.

Hu waited almost two months before he filed his fourth 2008 lawsuit– *Hu v. Timothy Evans, et. al.*, 08 C 2007. This cause of action stemmed from a forcible entry and detainer action filed by one of the defendants in the case at bar, Peter Huey, against Hu in Illinois State Court. Judge Sheryl Plethers presided over the action and Hu was forcibly evicted for failure to pay rent.[1] Hu alleges that he was deprived of a right to a fair trial because, among other allegations, Judge Plethers and Huey's counsel conspired against Hu and struck his jury demand on the basis of Hu's race. According to Hu's Complaint, Judge Plether's reason for striking his jury demand was that Hu waived it in his lease with Huey. Cplt. ¶ 21. Hu pleaded that Judge Plethers failed to take into account that Hu may have later orally amended the lease agreement. *Id.* A bench trial was held on December 13, 2007 but Hu refused to consent to the Court's jurisdiction. *Id.* at ¶ 27. The Judge advised Hu that he could not participate in the proceeding unless he submitted himself to the Court's jurisdiction. Hu insisted that he could participate in the trial without submitting to the Court's jurisdiction until the Court's Deputy threatened to remove Hu from the proceedings. *Id.* at ¶ 29.

During the State Court proceeding, Hu moved to intervene on behalf of two corporations, Citywide Mortgage Lending Corporation and Citywide Real Estate Corp. *See* Cplt. Dk. 1, ¶ 40. Hu was warned against filing any other pleadings or documents on behalf of anyone but himself lest Hu face prosecution by the State's Attorney for practicing law without a license. *Id.* Hu appealed Judge

---

[1] Incidentally, the *Evans* case is related to the same property at issue in the case before this Court.

Plether's decision to the Illinois Appellate Court and simultaneously filed federal claims against Defendants Allen Meyer, Chief Judge Timothy C. Evans, Honorable Judges Pamela Hill Veal and Sheryl Plethers, Brian Lewis, John Buscher, Park National Bank, Walinksi & Trunkett, and Robert Walinski alleging violations of the Due Process and the Equal Protection Clauses and the Fair Debt Collection Act.

On July 3, 2008, Hu filed his twelfth federal case– the fifth action filed this year– against Florencio Ramirez and L.A. Auto Body Inc. alleging that the defendants treated him differently on account of his race when they delayed repairs to his automobile. *See Hu v. L.A. Auto Body Inc.*, 08 C 3825.

Hu has also been a party-defendant in two federal causes of action. *See* 96 C 3428, and 98 C 7853. In *Re/Max Intl Inc v. Quality Realty Inc.*, the Court held Hu in contempt of court and sanctioned Hu $1,000 per day for failure to comply with court orders. 96 C 3428; Dk. 40, 44. Default judgment was entered against Hu and Zhou. Dk. 8.

## Hu's Cause of Action before this Court

Turning to Hu's cause of action before this Court, Hu filed his Complaint *pro se* on July 9, 2007. In short, Hu alleged that he and his wife, Jun Zhou, were lessees of the second floor premises of 219 W. Cermak in Chicago, Illinois. Dk. 1. Defendant Huey was the lessor and Defendants Ip and Chau run their accounting business in the same building as lessees. When Hu signed the lease agreement, Huey inserted a clause prohibiting Hu and Zhou from engaging in income tax preparation in the building because his other tenants, Ip and Chau, agreed to pay a premium on their lease with Huey so long as they were the only accounting business in the building. Though Hu signed the lease agreeing to the provision, Zhou told customers of their other businesses that she

could provide tax preparation services. Huey initiated eviction proceedings against Hu in Illinois State Court on the basis that Hu failed to pay rent and failed to fix the plumbing (*see* subject matter of *Hu v. Evans* described above 08 C 2007 and Hu's affidavit filed in his claim, Dk. 47). Hu filed this action seeking damages, declaratory, and injunctive relief under the Sherman Act, the First Amendment, the Illinois Antitrust Act, 42 U.S.C. §§ 1981 and 1982, the Illinois Retaliatory Eviction Act, and fraud. Dk. 15. Hu's Section 1981 and 1982 claims alleged that Huey, who is Chinese, discriminated against Hu, who is also Chinese. Count III alleged that Hu's First Amendment rights were violated because he could not tell customers that Zhou could do their income taxes.[2]

On July 30, 2007, Defendants moved to dismiss Hu's Complaint. Dk. 8, 10. The Court entered a briefing schedule on August 2, 2007. Dk. 14. Before briefing was completed on the motion, Hu filed a First Amended Complaint and a Motion to "Amend/Correct Rule 15(a) motion to amend complaint." Dk. 16. On August 30, 2007, the court denied Hu's Rule 15 (a) motion without prejudice and denied Defendants' motions to dismiss as moot. The Court set another briefing schedule on the Defendants' anticipated motion to dismiss the First Amended Complaint. Reply briefs were due by October 11, 2007. Dk. 20. On September 20, 2007, Huey moved to dismiss all of Hu's counts in the First Amended Complaint and Ip and Chau together moved to dismiss Hu's First Amendment and state and federal antitrust claims. Dk. 21, 24. Before briefing was completed on the pending motions to dismiss, Hu filed another motion to "Amend/Correct Rule 15 motion to amend complaint" and a Motion for Preliminary Injunction pursuant to 28 U.S.C. § 1651. Hu's Motion for Preliminary Injunction under § 1651 sought to stay the pending Circuit Court eviction proceedings under the All Writs Act or pursuant to Federal Rule of Civil Procedure 65.

---

[2] Zhou, is a licensed accountant and Hu assisted her with research. Cplt. ¶¶ 20-21; 40.

On September 26, 2007, Hu's Motion to Amend and Motion for Preliminary Injunction was denied until after the Court had an opportunity to rule on Defendants' pending motions to dismiss the First Amended Complaint. Dk. 27. Despite the Court's order, Hu re-filed his motion for preliminary injunction on the day that Defendants' replies were due. Four days later, Hu filed his motion for preliminary injunction a third time, but this time styling it as "refile what was filed on October 11, 2007." Dk. 33. All three motions set forth the same arguments and sought the same relief. On October 17, 2007, this Court heard oral argument on Hu's Motion for Preliminary Injunction pursuant to 28 U.S.C. § 1651 seeking a stay of the circuit court action. Hu's Motion for Preliminary Injunction was denied on the basis that it sought an extraordinary remedy without asserting irreparable injury. The Court advised Hu that it would rule on the pending motions to dismiss.

On October 30, 2007, Defendants' Motions to Dismiss were granted and Hu's First Amended Complaint was dismissed with prejudice. Dk. 35. Additionally, the Court denied Hu's Motion to "Amend/correct Rule 15 Motion to Amend Complaint" and Hu's September 24, 2007 Motion for Preliminary injunction. Judgment was entered in favor of Defendants and all pending dates, motions, and schedules were terminated as moot. *Id*.

On November 9, 2007, Hu filed a Motion to Reconsider under Federal Rule of Civil Procedure 59. Dk. 37. Two days later, Hu filed a "Supplemental Brief of the Rule 59 Motion" without leave of court. Dk. 39. On November 15, 2007, the Court entered a briefing schedule and advised that it would rule on Hu's motion by mail. Dk. 40. Both Defendants filed responses and plaintiff filed a reply. Dk. 41-43. Three days after replies were filed, Hu filed a "Motion to Stay Eviction per Rule 65 and All Writs Act" which he docketed as a motion for "writ of mandamus."

Hu's motion with his fourth attempt to stay the circuit court proceeding under 28 U.S.C. § 1651 and Rule 65. On February 25, 2008, while the motions were still pending, Hu petitioned the Seventh Circuit for a Writ of Mandamus Staying the Execution of Possession Order by the Circuit Court of Cook County. Dk. 51, 52. On March 4, 2008, the Seventh Circuit denied Hu's petition. Dk. 57.

## Motion to Reconsider

Hu moves to reconsider this Court's October 30, 2007 order dismissing his First Amended Complaint with prejudice. The only grounds for a Rule 59(e) motion are newly discovered evidence, an intervening change in the controlling law, and manifest error of law. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). Hu does not argue that there is newly discovered evidence or that there was an intervening change in the controlling law. Instead, Hu argues that the Court 1) should have granted Hu leave to amend his complaint; 2) applied an incorrect legal standard to Defendants' motions to dismiss; 3) erred when it found that Hu did not and could not allege that any of the defendants were agents of the government in his First Amendment claim 4) erred when it found that Hu failed to allege facts that show Huey's intent to discriminate against Hu on the basis of race when Huey charged Hu higher rent for space in the Building than Huey charged State Farm Insurance; 5) erred when it dismissed his § 1982 claim; 6) and erred when it held that Hu did not adequately allege the jurisdictional requirement of interstate commerce. As a preliminary matter, Hu does not allege that this Court committed a manifest error of law and simply regurgitates arguments that he previously raised in the fully briefed motions to dismiss.

The Seventh Circuit defines "manifest error" as "'wholesale disregard, misapplication, or failure to recognize controlling precedent'" on the part of the court. *Oto v. Metro. Life Ins. Co.*, 224

F.3d 601, 606 (7th Cir. 2000); *quoting Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Reconsideration is only appropriate when "the Court has patently misunderstood a party or has made a decision outside the adversarial issues presented to the Court by the parties or has made an error not of reasoning but of apprehension." *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 139 F. Supp. 2d 943, 945 (N.D. Ill. 2001), *quoting Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1191, 1195 (N.D. Ill. 2001).

Regarding Hu's argument that this Court should have allowed him leave to amend his First Amended Complaint and that the Court failed to apply the correct standard, a Court has discretion in deciding when to allow parties to amend their pleadings. *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002). Although every amendment after the first requires leave from the court, leave should be liberally granted "when justice so requires." Fed. R. Civ. P. 15(a). Where a pro se complaint is involved, district courts should in fact "allow ample opportunity" to amend. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). Save Count I, this Court did not error when it dismissed Hu's First Amended Complaint with prejudice. First, Hu was allowed to file an amended complaint on one occasion having had the benefit of reviewing the Defendants' motions to dismiss. For the reasons set forth in the Court's Opinion as well as those stated below, a review of Hu's First Amended Complaint proved that any further amendments to Hu's Section 1981, Section 1982, and First Amendment claims would have been futile under the law, and thus, justice did not require that leave be given.

Hu further argues that this Court erred by applying the incorrect standard on a motion to dismiss pursuant to Federal Rule 12(b)(6). To survive a motion to dismiss a plaintiff must allege facts that plausibly suggest entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955,

10

1965-66 (2007). This Court found that even taking Hu's allegations as true, Hu failed to make a showing that he was plausibly entitled to relief on any of his claims. Minute Order, pp. 1-3. Accordingly, Hu's argument that this Court failed to take his assertions as true is incorrect; instead, this Court found that Hu effectively pleaded himself out of Court. *See Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (A pro se complainant can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint.)[3] Accordingly, this Court did not commit a manifest error of law when it declined to allow Hu yet another chance to amend his Complaint when Hu pleaded himself out of Court.

This Court dismissed Hu's Sherman Act claims on the basis that he failed to adequately allege the jurisdictional requirement and failed to allude in any manner to interstate commerce in his First Amended Complaint. It is axiomatic that in pleading a cause of action under the Sherman Act §§ 1, 2, the plaintiff must adequately allege the jurisdictional requirement of interstate commerce." *Nelson v. Monroe Reg'l Med. Ctr.*, 925 F.2d 1555, 1565 (7th Cir. 1991) (*quoting Marrese v. Interqual, Inc.*, 748 F.2d 373, 379 (7th Cir. 1984)). Hu can satisfy the jurisdictional requirement of interstate commerce by showing that 1) the tax preparation is itself "in" interstate commerce; or 2) the tax preparation has a "substantial effect on interstate commerce." *See McClain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 242 (1980). It was not manifest error to dismiss Hu's First Amended Complaint because it was jurisdictionally deficient. *See McLain v. Real Estate Bd.*, 444 U.S. 232 , 242 (1979); *citing Wickard v. Filburn*, 317 U.S. 111 (1942); *United States v. Darby*, 312 U.S. 100 (1941) (Jurisdiction may not be invoked under that statute unless the

---

[3] Hu's arguments that the Supreme Court's decision in *Bell Atlantic v. Twombly* "should be confined where it belongs: anti-trust cases involving parallel anti-competitive conduct" is wrong under any interpretation of its holding.

11

relevant aspect of interstate commerce is identified; it is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce.)

In Hu's Motion to Reconsider, he argues, for the first time, that the allegation in his First Amended Complaint that Jun Zhou e-files income taxes suffices to establish that interstate commerce is substantially affected. Mtn. Recons., p. 16. Hu failed to raise this argument during the briefing of the motion to dismiss despite the fact that the jurisdiction issue was raised by the Defendants. A motion for reconsideration cannot "serve as the occasion to tender new legal theories for the first time." *Publishers Res. v. Walker-Davis Publication*, 762 F.2d 557, 561 (7th Cir. 1985). Nevertheless, Hu failed to plead facts that would support finding interstate commerce based on the tax return services being an "integral part of an interstate transaction," *Goldfarb v. Va. State B.*, 421 U.S. 773, 785 (1975), or having a "substantial effect on interstate commerce." *McLain*, 444 U.S. at 242. Because "it is not sufficient merely to rely on identification of a relevant local activity and to presume an interrelationship with some unspecified aspect of interstate commerce," Hu's claim was properly dismissed. [4] *Id.* Moreover, Hu's argument that Zhou's accounting business provided electronic filing suffices to allege the jurisdictional requirement of interstate commerce is unsupported in the law. Hu cites no case law for the proposition that mere electronic

---

[4] Hu cites *United States v. Yellow Cab Company*, 332 U.S. 218 (1947), *overruled on other grounds*, *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), in support of his argument that he sufficiently pleaded that jurisdictional requirement of interstate commerce in his Sherman Act Claim. *Yellow Cab*, however, is distinguishable in that *Yellow Cab* physically aided those interstate travelers by transporting them in between stations in the midst of their interstate travels. *Id.* at 228-29. The Court held, "All that we hold here is that when local taxicabs merely convey interstate train passengers between their homes and the railroad station in the normal course of their independent local service, that service is not an integral part of interstate transportation. And a restraint on or monopoly of that general local service, without more, is not proscribed by the Sherman Act." *Id.* at 233.

communications across state lines constitutes interstate commerce for purposes of the Sherman Act. Indeed, accepting this proposition would lead to untenable results, as any company that has ever made a long-distance telephone call or used e-mail could be said to have engaged in interstate commerce.

Despite having had the benefit of reviewing the parties motions to dismiss, Hu failed to plead a sufficient interstate connection nor did he argue that e-filing suffices as a jurisdiction element in his response brief to the Defendants' Motion to Dismiss. Hu has not provided newly discovered evidence or argued that there was an intervening change in the controlling law. Nor has Hu persuaded this Court that it disregarded, misapplied, or failed to recognize controlling precedent. Therefore, Hu's Motion to Reconsider as to Count I is denied. Count I– Hu's Sherman Act claim– was properly dismissed.[5]

Hu's Section 1981 claim was also appropriately dismissed. Section 1981 authorizes suits arising out of racial discrimination in the making and enforcing of contracts. *See* 42 U.S.C. § 1981. In order to state a claim under § 1981, a plaintiff must allege the following elements: (1) the plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute, which includes

---

[5] In addition to the reasons set forth in its Memorandum and Opinion order dismissing Count I, this Court further notes that Hu's pleadings run contrary to his ability to meet the requirements of both antitrust injury and antitrust standing. Hu has pleaded in his first Complaint that Jun Zhou prepared taxes for the last decade and that Hu helped her by performing legal research and advertising. Cplt. ¶¶ 20-21; 40. Hu attests in his affidavit that Zhou moved back into 219 W. Cermak in May, 2007. (¶2, Zhou and Hu Affidavit). "Not all persons who have suffered an injury flowing from [an] antitrust violation have standing to sue under § 4." *Kochert v. Greater Lafayette Health Servs.*, 463 F.3d 710, 715-16; (*citing In re Industrial Gas Antitrust Litigation*, 681 F.2d 514, 516 (7th Cir. 1982). "Only those parties who can most efficiently vindicate the purposes of the antitrust laws have antitrust standing to maintain a private action under § 4." *Id.*; (*citing Serfecz v. Jewel Food Stores*, 67 F.3d 591, 597-98 (7th Cir. 1995); (*quoting In re Industrial Gas*, 681 F.2d at 516).

the right to make and enforce contracts. *Id.*; *See also Daniels v. Pipefitters' Ass'n*, 945 F.2d 906, 913 (7th Cir. 1991); *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir. 1994); *Achor v. Riverside Golf Club*, 117 F.3d 339, 340 (7th Cir. 1997). The Statute defines "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981.

Hu does not allege that Defendants prevented Hu from entering in a contract; to the contrary, Hu leased a space from Defendant Huey. Moreover, Hu does not claim that his lease was modified or terminated on the basis of his race. Hu's factual basis for his Section 1981 claim is that Huey, who is Chinese, discriminated against Hu, who is also Chinese, by charging Hu and his business partner higher rent than their co-tenant, State Farm Insurance, because State Farm is "controlled by white people." Am. Cplt. ¶ 78. As pleaded, Hu's allegations are based in the assumption that State Farm has a racial identity and the assertion that a corporation, such as State Farm, has a racial identity has been rejected when considered in Section 1982 cases. S*ee Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263 (1977).

Moreover, Hu's allegations run contrary to others in his First Amended Complaint. Specifically, Hu alleges that the rental price for the property was "fixed" because Huey required Defendants Ip and Chau to pay a "significant extra amount of money" to add the restrictive covenant to the lease. Because of the Huey/Ip and Chau agreement, Huey was "able to charge substantially higher above the market rent" to Hu and Zhou. Am. Cplt. ¶¶ 33-35. Hu claims that he "had no choice" but to agree to the terms of the restrictive covenant in his lease with Huey because 219 West Cermak was "the only space available" to rent. Then, paragraphs later, Hu alleges that there were other, but less desirable, spaces to rent in Chinatown. *See* Am. Cplt. ¶ 15. Finally, that Huey

14

discriminated against Hu on the basis of his race by charging him higher rent contradicts Hu's allegations that Huey required Ip and Chau to pay a "significant extra amount of money" for their leased space.

Hu's allegations are conclusory and contradictory and do not pass the speculative test set forth in *Twombly*. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965-66 (2007). Accordingly, Hu's Section 1981 claim was properly dismissed.

Count III- Hu's First Amendment claim– was also properly dismissed. In Count III, Hu alleged that Defendants violated his First Amendment right to free speech by prohibiting Hu and Zhou from telling their customers about their tax preparation business. The Court dismissed the claim on the grounds that Hu failed to allege that Defendants were state actors. Hu does not dispute that it is "commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state." *Hudgens v. NLRB*, 424 U.S. 507, 513 (1976). Rather, in Hu's Motion to Reconsider, he argues, for the first time, that Hu's First Amendment claim is "intertwined" with this Sherman Act claim. Thus, Hu posits that because Defendants' restrictive covenant in the lease is a "'per se' violation of state anti-trust law" enforcing the covenant in an eviction could "very well turn this private action into a state action." Mtn. Reconsider, p. 9. Hu cites no case law supportive of his assertions, and accordingly, this Court did not commit a manifest error of law when it concluded that Hu's First Amendment claim failed as a matter of law because Defendants are not state actors.[6]

---

[6] Hu's reliance upon *Shelley v. Kraemer* is misplaced. In *Shelley*, the restrictive covenant was itself unconstitutional as it disallowed the occupancy or ownership of the operty "by people of the Negro or Mongolian races," and thus, violated the Equal Protection Clause of the U.S. Constitution. 334 U.S. 1, 5 (1948). By invoking state judicial proceedings to enforce the restrictive covenants, the defendants enlisted the help of state courts to knowingly bring about unconstitutional ends (i.e., race-based discrimination). Here, Hu is not alleging that the restrictive covenant is itself unconstitutional or that the restrictive covenant is being

Count VII- Hu's Section 1982 claim– was properly dismissed. Under Section 1982, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. As the Supreme Court has stated, Section 1982 is concerned with "the right of black persons to hold and acquire property on an equal basis with white persons and [to provide for] the right of blacks not to have property interests impaired because of their race." *City of Memphis v. Greene*, 451 U.S. 100, 122 (1981). Hu's Section 1982 claim was dismissed for failure to allege facts that plausibly entitle him to relief. Namely, Hu's Section 1982 claim was based upon the conclusory allegation that Huey charged Hu higher rent than State Farm Insurance because State Farm is controlled by white people. Understanding that Section 1982 is meant to protect the enforceability of property interests acquired by minority citizens and their right to use the property on an equal basis with whites, Hu's claim fails as a matter of law because State Farm, as a corporation, does not have a racial identity, *see Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263 (1977), and thus, Hu's allegation that he didn't enjoy the same rights as "white people" fails as a matter of law. Additionally, Hu's First Amended Complaint failed to allege any of the requisite elements of a Section 1982 claim. Accordingly, Hu's Section 1982 claim was properly dismissed.[7]

---

used to unconstitutional ends. Instead, he is alleging that Huey attempted to restrain his speech by including and enforcing a restrictive covenant barring tax services on the leased property. Similarly, *Lugar v. Edmonson Oil* is distinguishable on the basis that it was confined to the Fourteenth Amendment of the U.S. Constitution. 457 U.S. 922, 941-42 (1982). Nevertheless, none of these arguments were put before the Court in Response to Defendants' Motion to Dismiss the First Amended Complaint.

[7] Hu's argument that State Farm has a racial identity was made for the first time in his Motion to Reconsider. Hu cites *Hudson Valley v. Freedom Theater* in support of his argument, but *Hudson Valley* is distinguishable from *Arlington Heights* because it was limited to the issue of standing and involved a corporation whose goals were to reach out to particular races. 671 F. 2d 702, 705 (2nd Cir. 1982).

The Court did not have supplemental jurisdiction over Hu's state law claims and thus does not reach the merits of those claims. *See* 28 U.S.C. § 1367(a). At the time the Court dismissed Hu's claim, it held that "Hu may pursue [his state law] claims in state court, where a remedy for wrongful eviction may well be available."[8]

For the reasons stated, Hu's Motion to Reconsider is denied. Dk. 37. Hu's Motion for Writ of Mandamus is dismissed as moot. Dk. 45.[9] Based on Hu's pattern of violation of Court orders and abusive filings as set forth in the factual background in this opinion, this Court refers Yaodi Hu to the Executive Committee to consider whether he should be subjected to filing restrictions in the Northern District of Illinois.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: July 18, 2008

---

[8] Hu filed a Bystander's Report pursuant to Illinois Supreme Court Rule 323(c) where he recounted the October 18, 2007 hearing and December 13, 2007 trial in state court. Dk. 48. According to Hu's Bystander's Report, Huey raised defenses such as failure to pay rent and make required repairs to the plumbing under the terms of the lease. Hu insisted upon participating in the trial despite the fact that he refused to consent to the Court's jurisdiction. Hu finally consented after the State Court Judge ordered his removal from the bench. Hu could have raised any number of his many defenses to the state court eviction proceeding, as by his own account, a full trial and hearing was held on the merits of the case.

[9] As reflected in the docket, this is Hu's fourth attempt to stay the circuit court proceedings. Each time Hu files a motion he adds additional research but has essentially asks for the same relief under the save provision–namely, a stay of proceedings under 28 U.S.C. 1651 and Rule 65. In Hu's fourth motion, he offers no additional bases for staying the Circuit Court proceeding, and in fact, he refers to a Bystander's Report– in which Hu himself is the bystander–which states that the State Court proceedings were held on October 18 and December 13, 2007.